## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BETTY JOHNSON,
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:12-cv-590

Spiegel, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 5), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply

memorandum. (Doc. 11).

### I. Procedural Background

Plaintiff filed an application for DIB in September 2004, alleging disability since March

16, 2004, due to back, neck, shoulder, arm, and hand pain and leg swelling. Plaintiff's

application was denied initially and upon reconsideration. Plaintiff requested and was granted a

de novo hearing before Administrative Law Judge (ALJ) Deborah Smith. Plaintiff, her husband,

and a vocational expert (VE) appeared and testified at the ALJ hearing, at which plaintiff was

represented by counsel. On August 15, 2007, the ALJ issued a decision denying plaintiff's DIB

application. Plaintiff's request for review by the Appeals Council was denied and in December

2009, she sought judicial review of the ALJ's decision. *See Johnson v. Comm'r of Soc. Sec.*, No.

1:09-cv-936 (S.D. Ohio 2009) (*Johnson I*).

In *Johnson I*, the Court reversed the ALJ's decision and remanded for further proceedings

as follows:

> The Magistrate Judge determined that the ALJ's findings were not supported by substantial evidence ([Doc. 18] citing, *inter alia, Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Specifically, the Magistrate Judge found that the ALJ's determination that Plaintiff suffers from myofascial pain syndrome and not, as Plaintiff claims, fibromyalgia, was the result of an erroneous assumption that the two conditions are mutually exclusive and a factual error in finding that Plaintiff was not prescribed strong pain medication (*Id.*). Further, the Magistrate Judge determined that the ALJ's conclusion that Plaintiff had a residual functional capacity ("RFC") of medium and was capable of doing her previous work was not supported by substantial evidence in the record as a whole (*Id.*). In particular, the Magistrate Judge noted that the ALJ relied "heavily, if not exclusively" on the RFC form completed by consulting physicians who relied solely on a records review as the basis for their opinion (*Id.*). Notably, however, most of Plaintiff's records were not in her file at the time the consulting physicians conducted their review (*Id.*).

> Having found that the decision of the ALJ was not supported by substantial evidence in the record, the Magistrate Judge recommends that the case be remanded for further proceedings, that the ALJ carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome and that the ALJ fully review the medical evidence, including the functional capacity assessments of Plaintiff's treating physicians, and give specific reasons for the weight given to the opinions of the treating physicians (*Id.*).

*Johnson I*, No. 1:09-cv-936 (Doc. 18 at 2-3). Judge Spiegel adopted the Report and

Recommendation, vacated the decision of the ALJ, and remanded the matter for further

proceedings.

On remand, plaintiff, through counsel, appeared at a second hearing on December 15,

2011, before ALJ Smith. Plaintiff, a VE, and a medical expert (ME) testified at the ALJ hearing.

On April 24, 2012, ALJ Smith held a third hearing at which a different ME and VE testified. On

May 25, 2012, the ALJ issued a decision finding that plaintiff was not disabled. Plaintiff's

2

request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

3

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements for disability insurance benefits on her alleged onset date of March 16, 2004, and continued to meet them through December 31, 2009 (Exhibit 8D).
>
> 2. There is no evidence that the [plaintiff] engaged in any substantial gainful activity during the period from her alleged onset date through the date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe impairments: fibromyalgia and a myofascial pain syndrome (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. Careful consideration of the entire record shows that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] could sit, stand, and walk – each – only 2 hours at a time for 6 hours a workday. She cannot crouch, crawl, or climb ladders, ropes, or scaffolds. She could occasionally stoop and climb stairs. She should not work at unprotected heights or around hazards.

4

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. The [plaintiff] was born [in] . . . 1960, was 43 years old on her alleged onset date, was 49 years old on the date last insured, and considered to be a younger individual age 18-49 (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from March 16, 2004, the alleged onset date through December 31, 2009, the date last insured. (20 CFR 404.1520(g)).

(Tr. 427-38).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff raises eight assignments of error: (1) the ALJ improperly weighed the medical opinions of record; (2) the ALJ incorrectly analyzed plaintiff's fibromyalgia in light of Sixth Circuit precedent; (3) the ALJ improperly ignored the ME's opinion that plaintiff's facet joint arthropathy impairment met or equaled the Listing of Impairments; (4) the ALJ erred by failing to find that plaintiff's facet joint arthropathy is a severe impairment; (5) the ALJ erred by failing to follow the dictates of the remand order issued in *Johnson I*; (6) the ALJ improperly ignored evidence of record, namely a residual functional capacity (RFC) assessment performed

by Karen Scholl, plaintiff's physical therapist; (7) the ALJ erroneously held a third supplemental hearing in April 2012 despite having a complete record before her; and (8) the ALJ presented improper hypothetical questions to the VE.  Plaintiff also alleges the ALJ violated her due process rights by prematurely terminating the cross-examination of the ME at the April 2012 hearing.

**1. The ALJ complied with the remand order in *Johnson I*.**

Plaintiff argues the ALJ ignored the "real issue" cited by the Court in its remand order – that of plaintiff's RFC – and ignored plaintiff's almost three years of pain management treatment, which was the type of evidence that was absent from the previous record.  (Doc. 5 at 23).[1] Plaintiff also contends that ALJ erroneously rejected the functional capacity assessments of John B. Baxley, M.D., her treating internist from 2005 to 2006, and of Karen Scholl, P.T, the physical therapist who evaluated plaintiff on March 19, 2009. *Id.*

The Court's remand order in *Johnson I* required the ALJ to (1) carefully review evidence of plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome; (2) fully review the medical evidence, including the functional capacity assessments of plaintiff's treating physicians; and (3) give specific reasons for the weight given to the opinions of the treating physicians.  (Doc. 18).

---

[1] Plaintiff speculates that had this evidence been before the district court in the previous appeal, she would have obtained an outright reversal for an award of benefits.  The undersigned believes that plaintiff reads the district court's decision much too broadly.  In reviewing the ALJ's previous finding that fibromyalgia was not a severe impairment, Magistrate Judge Bowman addressed plaintiff's reliance on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) and distinguished *Rogers* because plaintiff's records did not reflect "classic fibromyalgia distribution" tender points, examination or treatment by a rheumatologist or specialist, or "rule out" testing as performed in *Rogers*.  While plaintiff was treated by a pain management specialist subsequent to the district court remand, the other factors that distinguished her case from *Rogers* are still at issue as discussed more fully *infra*.

As explained more fully below in Sections II.D.5, the ALJ complied with the dictates of the Court's remand order to consider the evidence of plaintiff's fibromyalgia and the functional capacity assessments of plaintiff's treating physicians. The ALJ likewise articulated specific reasons for the weight afforded those assessments. To the extent plaintiff alleges the ALJ erred by not discussing the functional assessment of the physical therapist, the Court finds no error as set forth in Section II.D.5. Nor did the ALJ "ignore" the relevant pain management records in assessing plaintiff's claim for disability. The ALJ specifically addressed plaintiff's treatment with Dr. Simons, a pain management specialist, beginning in April 2009 through the end of 2009 when plaintiff's insured status lapsed. (Tr. 431). The ALJ did not err by not considering the two years of treatment plaintiff received from Dr. Simons after her insured status lapsed on December 31, 2009. *See Higgs v. Bowen*, 888 F.2d 860, 863 (6th Cir. 1988) (evidence post-dating expiration of claimant's insured status only minimally probative); *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981) (post-insured status evidence of new developments in claimant's condition generally not relevant).[2]

The ALJ also considered plaintiff's alleged carpal tunnel syndrome and reasonably determined that the single notation of this impairment by Dr. Baxley was unsupported by the record evidence for the reasons stated in the ALJ's decision. (Tr. 435). Plaintiff alleges no error by the ALJ in consideration of this alleged impairment.

---

[2] The Court recognizes that post-insured status evidence may be relevant when it establishes an impairment existed continuously and in the same degree from the date that a claimant's insured status terminated. *Johnson v. Sec'y of H.E.W.*, 679 F.2d 605 (6th Cir. 1982). *See also King v. Sec'y of H.H.S.*, 896 F.2d 204, 205–06 (6th Cir. 1990) (post-expiration evidence must relate back to condition prior to the expiration of claimant's date last insured).

As the ALJ reviewed the evidence of plaintiff's fibromyalgia and carpal tunnel syndrome and re-assessed the functional capacity assessments of plaintiff's treating physician, the Court finds the ALJ complied with the remand order in *Johnson I*.

**2. The ALJ did not err by holding a third hearing.**

Plaintiff contends the ALJ erred by holding a third hearing and eliciting the opinion of Lee A. Fischer, M.D., the ME who testified at the April 2012 ALJ hearing. Plaintiff alleges the record supported a finding of disability at the conclusion of the second hearing at which ME Dr. Kushner testified because Dr. Kushner opined that plaintiff's recently diagnosed obstructive sleep apnea could explain her long-term symptoms and "[p]laintiff's condition met or equaled the Listing of Impairments based upon his diagnosis of facet joint arthropathy." (Doc. 5 at 13, 24).

The ALJ elected to hold a third administrative hearing because Dr. Kushner, the expert at the second hearing, testified he did not believe fibromyalgia was even a recognized medical impairment or disease. (Tr. 1011, 1014). In light of the Sixth Circuit case law and Social Security Ruling recognizing fibromyalgia as a medically determinable impairment, *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007) and Social Security Ruling 12-2p (2012), as well as the Court's remand order directing the ALJ to "carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia," it would surely have been reversible error had the ALJ relied on Dr. Kushner's testimony to deny plaintiff benefits. In addition, while Dr. Kushner testified that obstructive sleep apnea "could" explain plaintiff's underlying symptomotology (Tr. 1023), the ALJ noted that plaintiff was not diagnosed with this impairment until December 2009. The ALJ reasonably concluded that sleep apnea was

not the source of plaintiff's symptoms as no other physician related plaintiff's symptoms to sleep apnea and the evidence showed that despite being fitted with a CPAP machine in December 2009, which corrected plaintiff's sleep apnea, her other symptoms persisted. (Tr. 436). The ALJ reasonably determined that she needed to obtain additional testimony on plaintiff's fibromyalgia and sleep apnea in view of Dr. Kushner's testimony. There was no error in this regard and plaintiff has pointed to no legal authority establishing it is error to hold a supplemental hearing under the circumstances presented.

**3. The ALJ's Listings finding is supported by substantial evidence.**

Plaintiff claims that Dr. Kushner's testimony establishes "that [p]laintiff's condition met or equaled the Listing of Impairments based upon his diagnosis of facet joint arthropathy." (Doc. 5 at 13, 24). In assessing the merits of this assignment of error, the Court has carefully reviewed the transcript of the ALJ hearing relating to Dr. Kushner's testimony. In the context of discussing how a physician evaluates a patient's complaints of pain, Dr. Kushner drew a distinction between a patient's subjective complaints of pain and a finding of "tenderness," where touch elicits symptoms of pain. (Tr. 1019). Dr. Kushner explained that tenderness findings may provide an explanation for the underlying pain, such as signaling an underlying inflammatory or degenerative process. *Id.* Dr. Kushner was then questioned on Dr. Simons' findings of tenderness in different areas in his examinations of plaintiff. Dr. Kushner then testified:

> A. . . . Just as a digression, the tender points were regarded as valid for a long time, but nobody ever studied them to see how valid they were. They required validation. And I'm not sure the detection of facet joint tenderness in the cervical spine has ever really been validated. You know, I'm taking a hard nosed scientific approach to the practice of medicine, and yeah, if you push me, I'll say well the fact of the matter is that medicine is not really a science, and that we have to allow

10

a little slack for the their non-scientific approaches – yeah, I mean it's true. I'm not going to dig my heels in on that. If, you know, if you wish to [INAUDIBLE] that her major problems (sic) is facet joint arthropathy, and that it is medically determinable by finding tenderness in the, in certain spots in the cervical spine, [INAUDIBLE] her sufficiently to equal some listing or other in the system, I'll go along with that.

Q. So I think what you were saying is . . . that you have a large amount of skepticism for some of the pain diagnoses as you've described fibromyalgia, myofascial pain syndrome, and a (sic) can accept that.

A. That's correct. Because I think you're right.

Q. And – correct. And I think you are saying that others in the medical profession would disagree with you, and would hold a –

A. Yes, yes. I believe you're right.

Q. That some physicians, some experts would support the notion that fibromyalgia is a medically determinable condition? I'm not –

A. Yeah, yeah. Okay, yeah.

(Tr. 1019-21).

Plaintiff relies on the above testimony to conclude that her "condition met or equaled the Listing of Impairments based upon [Dr. Kushner's] diagnosis of facet joint arthropathy." Contrary to plaintiff's argument, Dr. Kushner's testimony is confusing, equivocal, and does not clearly establish that plaintiff met or equaled a Listing for facet joint arthropathy. Dr. Kushner does not "diagnose" facet joint arthropathy, nor does he conclude that plaintiff actually meets a specific Listing based thereon. In fact, Dr. Kushner expressed his skepticism about the impairment given the absence of validation of facet joint arthropathy in the cervical spine. The testimony cited above is Dr. Kushner's only comment on facet joint arthropathy in connection with the Listings and does not amount to an assessment of any particular Listing. It is not clear

11

what Dr. Kushner meant by the following statement: "If, you know, if you wish to [INAUDIBLE] that her major problems (sic) is facet joint arthropathy, and that it is medically determinable by finding tenderness in the, in certain spots in the cervical spine, [INAUDIBLE] her sufficiently to equal some listing or other in the system, I'll go along with that." There are no follow-up questions to Dr. Kushner to flesh out or clarify his testimony. Dr. Kushner does not identify or analyze any particular Listing in his testimony, nor does he evaluate the specific elements of a particular Listing and how the medical evidence of record meets or equals those elements. Based on this testimony of Dr. Kushner, the Court cannot find any error in the ALJ's decision declining to find plaintiff met or equaled a listed impairment.

**4. The ALJ did not err by presenting "invalid" hypothetical questions to the VE**

Plaintiff contends the ALJ erred "by adopting the opinion of the vocational expert based upon invalid hypothetical questions." (Doc. 5 at 20). However, plaintiff fails to identify the allegedly "invalid" hypothetical questions or present any developed argument on this assignment of error. Without any argument or citation to the record evidence in this regard, the Court does not find any error in the ALJ's vocational analysis.[3]

---

[3] Similarly, while plaintiff alleges the ALJ erred by failing to find plaintiff's facet joint arthropathy is a severe impairment (Doc. 5 at 20), plaintiff has presented no developed argument on this alleged error. Even if the ALJ erred in not finding plaintiff's facet joint arthropathy to be a "severe" impairment, such error was harmless. Social Security regulations require that if one "severe" impairment exists, all impairments – severe or otherwise – must be considered in the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(e). Where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *See Meadows v. Comm'r of Soc. Sec.*, No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citing *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir.1987)). Here, the ALJ found "severe" fibromyalgia and myofascial pain syndrome at step 2 of the sequential evaluation and went on to consider Dr. Simon's pain management treatment in assessing plaintiff's RFC, despite no finding of "severe" facet joint arthropathy as diagnosed by Dr. Simon. (Tr. 436). Thus, any error the ALJ committed by not finding severe facet joint arthropathy was harmless.

12

**5. The ALJ's analyses of plaintiff's impairments, RFC and weight to the opinion evidence are substantially supported by the record evidence**.

As plaintiff has combined her arguments regarding Errors 1, 2, and 6, the Court will likewise address them together. Plaintiff asserts the ALJ erroneously weighed the medical opinions of record, including the opinion of her physical therapist, in determining that plaintiff's fibromyalgia and other impairments are not disabling. Specifically, plaintiff argues the ALJ erred by adopting the opinion and RFC assessment of Dr. Fischer, the ME at the third hearing, over the opinions of her treating physician, Dr. Baxley, and physical therapist, Ms. Scholl because Dr. Fischer's testimony reflects a flawed understanding of fibromyalgia.

The ALJ adopted Dr. Fischer's opinion that plaintiff is capable of performing "light work" with certain limitations because, despite his concerns about the supportability of plaintiff's fibromyalgia diagnosis, Dr. Fischer's RFC opinion was the most consistent with the evidence of record. (Tr. 437). The ALJ gave "some weight" to Dr. Baxley's opinion that plaintiff was capable of performing only "sedentary work," in part because Dr. Baxley opined that plaintiff had a limited ability to perform fine and gross manipulations due to carpal tunnel syndrome but the record evidence contained "no clear evidence of carpal tunnel syndrome." (Tr. 435). The ALJ briefly discussed the records from plaintiff's physical therapy sessions (Tr. 431) but declined to weigh the opinion of Ms. Scholl. For the following reasons, the undersigned finds the ALJ did not err in weighing the opinions of Dr. Fischer and Dr. Baxley or by not assigning weight to the RFC assessment completed by the physical therapist.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight

13

than those of physicians who examine claimants only once," *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 530-31 (6th Cir. 1997), or to the opinions of non-examining medical advisors or

experts. *See Sherrill v. Sec. of HHS*, 757 F.2d 803, 805 (6th Cir. 1985). *See also Harris v.*

*Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating

physicians are generally accorded substantial deference, and if the opinions are uncontradicted,

complete deference.").

  "Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ

declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See*

*Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and

extent of the treatment relationship and the frequency of examination. 20 C.F.R. §

404.1527(c)(2)(i), (ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical

specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the

opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

The ALJ must give "good reasons" for the weight afforded a treating source's opinion and those

reasons must be supported by the record evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.

2011).

Where a medical source is not a treating source, the ALJ must consider the following factors in determining how much weight to afford the opinion: the length and nature of the treatment relationship, the evidence that the physician offered in support of his opinion, the consistency of the opinion with the record as a whole, and whether the physician was practicing a specialty. *See* 20 C.F.R. § 404.1527(c). *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). The weight given to the opinions of non-examining sources will depend on the "degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3). A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians. *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).

Plaintiff treated with Dr. Baxley of the Regional Family Health Center for one year from August 2005 to July 2006. (Tr. 315-34). Dr. Baxley's treatment notes include plaintiff's subjective reports of pain in her left side, neck, back, wrists, and feet (Tr. 315, 317, 319, 327, 330, 332-34) and objective findings of bilateral hyperactive knee reflexes and left biceps reflex; positive Spurling's test with spasm and tightness of the left neck; and spasm of the left cervical spine at C6 and C7. (Tr. 315, 319, 327, 330, 333-34). January, February, March, May, June, and July 2006 examination results revealed a supple neck with no tenderness, full range of motion in the back, normal deep tendon reflexes, and normal gait. (Tr. 325, 328, 331). Plaintiff experienced some swelling in the legs in late January and early February 2006. (Tr. 324-25, 327). A February 9, 2006 examination showed that plaintiff had a normal gait and was able to

15

move her extremities without difficulty, and that her swelling apparently resolved with medication. (Tr. 321, 324). In June and July 2006, Dr. Baxley noted positive Tinel and Phalen signs of both wrists. (Tr. 315, 317). Dr. Baxley diagnosed plaintiff with cervical spine syndrome with secondary radiculopathy and pain with leg spasms (Tr. 334); possible herniated disc along with restless leg syndrome and neuropathy (Tr. 333); fibromyalgia (Tr. 327); and carpal tunnel syndrome. (Tr. 317).

On August 16, 2006, Dr. Baxley completed a "Fibromyalgia and Myofascial Pain Functional Questionnaire." (Tr. 301-04). Dr. Baxley opined that plaintiff had fibromyalgia, carpal tunnel syndrome, and depression. (Tr. 301). Though Dr. Baxley stated plaintiff's prognosis was good, he opined that plaintiff had severely limited functional abilities, including only being able to sit or stand for less than two hours at a time; needing to shift positions at will; being able to carry only 10 pounds occasionally; and being restricted to handling and fingering objects with her right hand 50 percent of the time and with her left hand 10 percent of the time with no ability to reach overhead. (Tr. 301, 303-04). Dr. Baxley stated that the basis of his opinion was "no labs, [negative] MRI of wrist July 2006."[4] (Tr. 301).

The ALJ gave "some weight" to Dr. Baxley's RFC assessment, "except for the limitations on fine and gross manipulations." (Tr. 435). The ALJ noted that there was no objective evidence supporting a diagnosis of carpal tunnel syndrome or Dr. Baxley's associated limitations. *Id.* Further, the ALJ identified that April 2004 and August 2009 EMG and nerve conduction studies yielded normal results. (Tr. 435, citing Tr. 170, 830). As for the other limitations imposed by Dr. Baxley, the ALJ opted instead to adopt the RFC assessment of Dr. Fischer, the

---

[4] A July 3, 2006 MRI of plaintiff's cervical spine revealed largely normal results with mild tonsillar ectopy noted. (Tr. 356).

ME, because Dr. Fischer's opinion was most consistent with the subjective and objective evidence of record. (Tr. 437).

Dr. Fischer opined that plaintiff was capable of performing a range of light work[5] with additional limitations such as sitting, standing, and walking six hours out of an eight hour day, two hours at a time each; no use or climbing of ladders, ropes, or scaffolding; no crouching or crawling; and only occasional stooping or climbing of stairs. (Tr. 1071). Dr. Fischer testified at length about the deficiencies of Dr. Baxley's RFC assessment and why he did not believe plaintiff had any limitations associated with fibromyalgia. *See* Tr. 1064-97. After explaining the difficulty in diagnosing fibromyalgia, Dr. Fischer stated that he did not believe that Dr. Baxley's diagnosis was supported by the record evidence. (Tr. 1064-65). Dr. Fischer testified that the record did not include any evidence of specific tender points on examination but, rather, the record largely consisted of plaintiff's complaints of pain. (Tr. 1065). For example, Dr. Fischer discussed treatment notes where plaintiff complained of pain but where no tenderness was found on palpation. (Tr. 1065, citing Tr. 312). Dr. Fischer stated that "[b]asically [plaintiff] doesn't have any physical findings whatsoever of fibromyalgia or any other complaint of pain in any other area, other than her neck, and [Dr. Baxley is] attributing it to fibromyalgia" despite the lack of evidence supporting the diagnosis. (Tr. 1066). Dr. Fischer further explained that while there is often not objective evidence supporting a fibromyalgia diagnosis, that in this instance plaintiff's symptoms are disproportionate to the overall physical examination findings of record. (Tr. 1068-69). Dr. Fischer further testified that he believed Dr. Baxley's opinion was a result of

---

[5] The Social Security regulations define "light work" as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." "Light work" further involves jobs where a good deal of walking or standing is involved or mostly sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

17

his treatment of plaintiff's pain and that he diagnosed her with fibromyalgia "to come up with some type of label" for plaintiff's maladies. (Tr. 1069).[6]

The ALJ adopted Dr. Fischer's RFC opinion despite the ME's concerns that the record did not support a diagnosis of fibromyalgia because his opinion on plaintiff's functional limitations was the most consistent with the evidence of record. (Tr. 437). The ALJ's decision in this regard is substantially supported by the record. The ALJ discussed Dr. Fischer's testimony and opinion at length and clearly articulated her rationale for adopting his limitations. First, the ALJ discussed Dr. Fischer's rejection of Dr. Baxley's fibromyalgia diagnosis based on the lack of supporting findings in his treatment notes – particularly the absence of trigger point findings and subjective complaints which are generally present in fibromyalgia patients. *See* Tr. 436, 1065, 1069, 1074, 1078-79, 1084-85. Second, the ALJ noted that Dr. Baxley did not rule out other potential reasons for plaintiff's symptoms given that fibromyalgia is a diagnosis of exclusion. (Tr. 436). Third, the ALJ identified Dr. Fischer's testimony regarding inconsistencies between the objective evidence and Dr. Baxley's RFC assessment, *e.g.*, plaintiff exhibited normal reflexes and leg strength on examination and no difficulty ambulating but Dr. Baxley concluded that she had extreme sitting, standing, and walking limitations. *See* Tr. 436, 1068, 1073. Fourth, the ALJ noted Dr. Fischer's testimony that the objective evidence demonstrated that plaintiff had responded well to sleep apnea treatment, had normal conduction

---

[6] Despite Dr. Fischer's rejection of plaintiff's fibromyalgia diagnosis, the ALJ nevertheless found that plaintiff had the severe impairment of fibromyalgia. (Tr. 429). It appears the ALJ made this determination largely based on the remand order from *Johnson I*, as the ALJ stated that (1) she sought the testimony of the ME due to the lack of clear evidence of fibromyalgia in the record, and (2) the prior order of the Court required her to find fibromyalgia is a severe impairment. (Tr. 434, 437). Upon review, the undersigned does not agree with the ALJ's interpretation of the prior remand order. That order simply required the ALJ to carefully review the evidence related to plaintiff's allegations of additional limitations based on evidence of fibromyalgia but did not mandate a finding that the impairment was severe.

18

studies in her extremities, and was able to treat her degenerative disc disease with epidural

steroid injections, which was inconsistent with the limitations provided by Dr. Baxley. *See* Tr.

436-37, 1072-73, 1085.

      Faced with these starkly contrasting opinions, the ALJ reasonably determined, based on

Dr. Fischer's testimony and the whole of the record evidence, to discount Dr. Baxley's RFC

assessment. It is the Commissioner's function to resolve conflicts in the medical evidence.

*Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of H.H.S.*, 823 F.2d

922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The

Commissioner's determination must stand if it is supported by substantial evidence regardless of

whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v.

Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347

(6th Cir. 1993); *Tyra v. Sec'y of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The fact that the

record could support a contrary conclusion does not mean the ALJ's decision is not supported by

substantial evidence. *See Collins v. Astrue*, 373 F. App'x 552, 556 (6th Cir. 2010) (court must

defer to the agency "even if there is substantial evidence in the record that would have supported

an opposite conclusion, so long as substantial evidence supports the conclusion reached by the

ALJ" the ALJ's decision should be given deference) (quoting *Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)).

      Here, the ALJ rejected Dr. Baxley's opinion because: (1) his diagnosis of fibromyalgia

was not supported by the requisite examination findings and symptomology; (2) his diagnosis of

and accordant limitations for carpal tunnel syndrome was contradicted by the objective findings;

(3) there was no evidence of record from a rheumatologist which supported a finding that

19

plaintiff had significant physical limitations due to fibromyalgia; and (4) Dr. Fischer's testimony

and opinion was more consistent with the record as a whole as to plaintiff's functional

limitations. Substantial evidence supports the ALJ's determination to reject Dr. Baxley's RFC

assessment due to its inconsistency and lack of support, regardless of how plaintiff or the Court

would have resolved the conflict. *See Kinsella*, 708 F.2d at 1059. The ALJ thoroughly discussed

the lengthy record evidence and found that Dr. Baxley's opinion failed to accurately reflect

plaintiff's physical abilities. Consequently, the ALJ's decision to discount Dr. Baxley's opinion

is supported by substantial evidence.[7]

To the extent plaintiff argues that the ALJ's evaluation of plaintiff's fibromyalgia is

inconsistent with Sixth Circuit precedent, the undersigned disagrees. Fibromyalgia is a condition

that "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to

sleep disturbances." *Preston v. Sec'y of H.H.S.*, 854 F.2d 815, 817-20 (6th Cir. 1988). In the

context of social security disability cases, fibromyalgia presents particularly challenging issues in

determining credibility, RFC, and disability because its symptoms are entirely subjective. *See*

*Rogers*, 486 F.3d at 243 n.3. Similar to chronic fatigue syndrome, *Cohen*, 964 F.2d at 529,

fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly

relevant" in diagnosing or assessing fibromyalgia or its severity. *Preston*, 854 F.2d at 820. *See*

*also Rogers*, 486 F.3d at 243-44 ("in light of the unique evidentiary difficulties associated with

the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence

---

[7] In support of her argument that the ALJ erred in adopting Dr. Fischer's RFC assessment, plaintiff claims that "the ALJ incorrectly stated that Dr. Fischer was an internist [when, instead,] he was a family practice physician. . . ." (Doc. 5 at 23). Plaintiff fails to identify the difference between the two, however, and the undersigned finds that the distinction has no bearing on Dr. Fischer's medical expertise as it relates to his testimony in this matter. *See Isbel v. Comm'r of Soc. Sec.*, No. 1:06-cv-384, 2008 WL 2676363, at *13 (S.D. Ohio July 2, 2008) (recognizing similarity of internists and family practice physicians as both are primary care physicians).

are not particularly relevant"); *Swain v. Comm'r of Soc. Sec'y*, 297 F.Supp.2d 986, 990 (N.D.

Ohio 2003) ("[f]ibromyalgia is an 'elusive' and 'mysterious' disease. It has no known cause and

no known cure. Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and

multiple acute tender spots at various fixed locations on the body.") (footnotes and citations

omitted).

Here, the ALJ made a factual finding at Step 2 of the sequential evaluation process that

plaintiff's fibromyalgia is a severe impairment under the Social Security Regulations. (Tr. 429,

Finding #3, citing 20 C.F.R. § 404.1520(c)). Upon making this determination, the ALJ

continued to apply the appropriate standard in evaluating the limitations plaintiff faced due to her

fibromyalgia. Plaintiff argues the ALJ erred by adopting Dr. Fischer's RFC assessment because

he opined that the evidence of record did not support a finding that plaintiff had, or was limited

by, fibromyalgia. (Doc. 5 at 21). Plaintiff paints Dr. Fischer's opinion as being rooted in a lack

of objective findings which, as stated above, is not a sufficient basis for rejecting limitations

associated with fibromyalgia. *See Preston*, 854 F.2d at 820; *Rogers*, 486 F.3d at 243-44.

However, Dr. Fischer's opinion that plaintiff did not have disabling fibromyalgia was not based

solely on a lack of objective findings. Dr. Fischer provided detailed testimony about

fibromyalgia and acknowledged that it was not easily diagnosable through objective tests. (Tr.

1064-65). Dr. Fischer then detailed why plaintiff's treatment records did not, in his opinion,

support a finding that she was limited by fibromyalgia because, *inter alia*,: (1) the treatment

notes did not meet the criteria utilized by the American Rheumatologic Association for

diagnosing fibromyalgia (Tr. 1065); (2) the treatment notes from plaintiff's providers attributed

basic neck pain to fibromyalgia despite no findings of trigger point pain (Tr. 1065, citing Tr.

21

312); and (3) the records did not have "any physical findings whatsoever of fibromyalgia or any other complaint of pain in any other area, other than her neck . . . ." (Tr. 1066). Contrary to plaintiff's argument, the ALJ did not reject plaintiff's treating physician's limitations due to a lack of objective evidence. Rather, the ALJ discussed Dr. Fischer's opinion in the context of the *Preston* standard for assessing fibromyalgia and reasonably relied on Dr. Fischer's comprehensive testimony which identified several "good" reasons for rejecting Dr. Baxley's opinion that plaintiff suffered from disabling fibromyalgia.

Nevertheless, plaintiff contends that Dr. Fischer's testimony could in fact support the fibromyalgia diagnosis because he "agreed that plaintiff's treating physician found her to have many of the symptoms associated with fibromyalgia." (Doc. 5 at 22, citing Tr. 1077-78). The testimony referenced by plaintiff is directed solely to the "Fibromyalgia" questionnaire completed by Dr. Baxter in which he checked off many symptoms that Dr. Fischer agreed were consistent with a diagnosis of fibromyalgia. (Tr. 1077-78). But significantly, Dr. Fischer also testified that he did not see confirmation of the alleged fibromyalgia symptoms on the check-off form in Dr. Baxter's records, nor did Dr. Baxter's treatment records evidence a process of diagnosis elimination. (Tr. 1078, 1079, 1083, 1084, 1085). Plaintiff has not pointed to progress notes or records aside from Dr. Baxter's "Fibromyalgia" questionnaire to show that Dr. Baxter's opinion is well-supported by his clinical and diagnostic findings. Accordingly, the Court finds that the ALJ applied the appropriate standards under Sixth Circuit precedent for evaluating plaintiff's fibromyalgia.

Lastly, plaintiff argues the ALJ erred by not addressing the opinion of physical therapist Scholl, which was generated after the Court's prior remand order. (Doc. 5 at 23). Ms. Scholl

22

opined that plaintiff "would have difficulty working at this time due to production of pain [with] most activities." (Tr. 650). The ALJ discussed plaintiff's physical therapy findings, noting that they contained mostly findings of diminished lumbar and cervical range of motion with intact sensory examinations. (Tr. 431). This also accurately summarizes the "functional activities" portion of the RFC assessment provided by Ms. Scholl. *See* Tr. 650. Plaintiff argues that the therapist's RFC assessment supports Dr. Baxley's RFC opinion and, thus, should have been weighed by the ALJ. Plaintiff's argument is not well-taken.

First, the RFC assessment from Ms. Scholl includes findings that plaintiff's range of motion is within functional limits except for her neck and lower back and her muscle strength is fair to good across the board. (Tr. 650). Contrary to plaintiff's assertion, these findings are not consistent with Dr. Baxley's severely restrictive RFC assessment.

Second, while Ms. Scholl determined that plaintiff could only sit for five to ten minutes; stand for 30 minutes; and walk for five minutes at a time, she says nothing about how long plaintiff can do these activities throughout the day. It is therefore unclear how consistent this opinion is with Dr. Baxley's as to plaintiff's ability to sit, stand, and walk throughout a full 8-hour work day.

Third, and most importantly, the ALJ was not required to give any special weight to Ms. Scholl's RFC assessment because a physical therapist like Ms. Scholl is not an acceptable "medical source" who is qualified to assess the severity of plaintiff's impairments and functioning. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20 C.F.R. § 404.1513(d)(1) (medical sources not

23

listed in § 1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r*, No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (Dlott, J.) (same). Because physical therapists are not considered acceptable medical sources under the regulations, the ALJ was not required to give any special deference to Ms. Scholl's RFC assessment. Consequently, the ALJ did not err by declining to weigh Ms. Scholl's opinion.

For the above reasons, the undersigned finds that the ALJ did not err in assessing plaintiff's RFC or weighing the opinions of record.

**6. The ALJ did not violate plaintiff's due process rights.**

The Social Security Act, 42 U.S.C. § 405(b), and due process require that a claimant receive meaningful notice and a full and fair opportunity to be heard before a claim for disability benefits can be denied. *Stoner v. Sec'y of H.H.S.*, 837 F.2d 759, 760-761 (6th Cir. 1988) (citing *Parker v. Califano*, 644 F.2d 1199 (6th Cir. 1981)). The Social Security regulations specifically provide: "Any party to a hearing has the right to appear before the administrative law judge . . . to present evidence and to state his or her position. A party may also make his or her appearance by means of a designated representative. . . ." 20 C.F.R. § 404.950(a). "The essence of due process is the requirement that a person in jeopardy of a serious loss be given notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard to

24

insure that they are given a meaningful opportunity to present their case." *Flatford v. Chater*, 93

F.3d 1296, 1306 (6th Cir. 1996) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976))

(internal citations and quotations omitted).

Plaintiff contends the ALJ "cut short" her attorney's cross-examination of Dr. Fischer at

the April 2012 hearing and, consequently, violated her due process rights to a full and fair

hearing. (Doc. 5 at 24-25). Specifically, plaintiff's attorney states that he was denied the

opportunity to question Dr. Fischer about Ms. Scholl's March 2009 RFC opinion. *Id.* Plaintiff

asserts the ALJ's premature conclusion of Dr. Fischer's cross-examination constitutes reversible

error. The undersigned disagrees.

A review of the April 24, 2012 hearing transcript demonstrates that plaintiff was given

ample opportunity to cross examine Dr. Fischer and present her case. Plaintiff's counsel

extensively questioned Dr. Fischer about the medical records, his medical opinion on plaintiff's

physical limitations, and the doctor's basis for disagreeing with the limitations provided by

plaintiff's treating medical providers. *See generally* Tr. 1073-96. After an extensive cross-

examination, the ALJ instructed plaintiff's counsel to "wrap it up" several times as it was still

necessary to question the VE and the ALJ had to attend to another scheduled hearing. (Tr. 1085,

1092, 1096). Despite having obtained Dr. Fischer's opinions on every pertinent medical opinion,

counsel reluctantly concluded his questioning stating that he "would have other questions for

[Dr. Fischer]" (Tr. 1097) without identifying on the record what those questions would be. In her

Statement of Errors, plaintiff asserts she would have questioned Dr. Fischer on the RFC opinion

and testing results of plaintiff's physical therapy. (Doc. 5 at 24-25). However, plaintiff has not

demonstrated that she was prohibited from obtaining this information from Dr. Fischer through

25

the issuance of interrogatories - the use of which the Sixth Circuit has repeatedly held satisfies due process requirements in social security administrative determinations. *See Chandler v. Comm'r of Soc. Sec.*, 124 F. App'x 355, 359 (6th Cir. 2005). *See also Flatford*, 93 F.3d at 1305-06 (given non-adversarial nature of social security disability determinations, due process does not require that plaintiffs be permitted to cross-examine physicians given ability to use interrogatories). Given the extensive questioning of Dr. Fischer by plaintiff's counsel at the hearing and the lack of evidence that plaintiff was prohibited from later obtaining further information regarding the physical therapy documentation,[8] the undersigned finds that the ALJ did not violate plaintiff's due process rights to a full and fair hearing.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _8/14/13_

Karen L. Litkovitz
United States Magistrate Judge

---

[8] Notably, as the information plaintiff sought was related to the findings and opinion of the physical therapist, any ostensible error was harmless. As discussed *supra*, physical therapists are not acceptable medical sources and the ALJ was not required under the applicable regulations to afford Ms. Scholl's opinion any special deference.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BETTY JOHNSON,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-590
Spiegel, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

27