UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BETTY JOHNSON,                    :     No. 1:12-cv-590
                                  :
        Plaintiff,                :
                                  :
    v.                            :     **OPINION AND ORDER**
                                  :
COMMISSIONER OF SOCIAL            :
SECURITY,                         :
                                  :
        Defendant.                :

This matter is before the Court on the August 14, 2013 Report and Recommendation of Magistrate Judge Karen L. Litkovitz (doc. 12), to which Plaintiff has objected (doc. 13). For the reasons indicated herein, the Court REJECTS the Magistrate Judge's recommended decision.

**I.  Background**

Plaintiff Betty Johnson filed an application for disability insurance benefits ("DIB") in September 2004, alleging disability since March 16, 2004 (Tr. 59-62). Her application was denied initially and upon reconsideration (Tr. 30-37). Plaintiff requested and was granted a de novo hearing before Administrative Law Judge ("ALJ") Deborah Smith in July 2007 (Tr. 38-50). On August 15, 2007, the ALJ issued her decision (Tr. 10-22). She found that Plaintiff had the severe impairment of myofascial pain syndrome (Tr. 15-16) and a residual functional capacity ("RFC") to perform a range of medium work (Tr. 16-20).

1

She determined further that Plaintiff was able to perform her past relevant work, as well as other jobs that exist in significant numbers in the national economy such as light maid/housekeeper, sedentary information clerk and medium janitor/cleaner (Tr. 20-21). On this basis, then, ALJ Smith denied Plaintiff's DIB application (Tr. 22). Plaintiff's request for review by the Appeals Council was denied (Tr. 4-9), and in December 2009, she sought judicial review of the ALJ's decision (see Johnson v. Comm'r of Soc. Sec., No. 1:09-cv-936 (S.D. Ohio 2009) ("Johnson I") (doc. 1)).

In a Report and Recommendation dated January 31, 2011, Magistrate Judge Stephanie K. Bowman concluded that the ALJ's findings were not supported by substantial evidence (see Johnson I (doc. 17)). Specifically, she reported that the ALJ's determination that Plaintiff suffered from myofascial pain syndrome and not, as Plaintiff claimed, fibromyalgia, was the result of an erroneous assumption that the two conditions are mutually exclusive; she also reported a factual error on the ALJ's part in stating that Plaintiff was not prescribed strong pain medication (Johnson I (doc. 17 at 8-9)). Further, the Magistrate Judge reported that the ALJ's determinations that Plaintiff had the functional capacity to perform medium work and that she was capable of doing her previous work were not supported by substantial evidence in the record as a whole. In

2

particular, she observed that the ALJ relied "heavily, if not exclusively" on the RFC forms completed by consulting physicians who relied solely on a records review as the basis for their opinion. Notably, however, most of Plaintiff's records were not in her file at the time the consulting physicians conducted their review (Johnson I (doc. 17 at 10-11)). Having resolved that the decision of the ALJ was not supported by substantial evidence, Magistrate Judge Bowman recommended that the case be remanded for further proceedings, with the instruction that the ALJ carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia and/or carpal tunnel syndrome and that the ALJ fully review the medical evidence, including the functional capacity assessments of Plaintiff's treating physicians, and give specific reasons for the weight given to the opinions of the treating physicians (Johnson I (doc. 17 at 14)). No objections to the Report and Recommendation were filed, and, upon review, we found it to be well-reasoned, thorough and correct. As such, in an Opinion and Order signed on February 23, 2011 and docketed the next day, we adopted and affirmed it, vacated the decision of the ALJ that Plaintiff be denied disability benefits, remanded the matter to the ALJ for proceedings consistent with our Opinion, and dismissed the case from our docket (Johnson I (doc. 18)).

Upon remand, a second administrative hearing finally occurred on December 15, 2011, again before ALJ Smith. At that hearing, testimony was received from Plaintiff, Irving Kushner, M.D., called as a medical expert ("ME"), and Mark A. Pinte, called as a vocational expert ("VE") (Tr. 549-58). The ALJ did not issue a decision after that hearing, but, rather, over Plaintiff's objections (Tr. 636-37), held another hearing on April 24, 2012, at which a different ME, Lee A. Fisher, M.D., and a different VE, George E. Parsons, Ph.D. testified (Tr. 559-573). On May 25, 2012, the ALJ issued an unfavorable decision to Plaintiff, denying her benefits for the second time (Tr. 424-39). She determined that Plaintiff had the severe impairment of fibromyalgia in addition to the severe impairment of myofascial pain syndrome, as well as an RFC to perform a range of light work. As before, the Appeals Council did not exercise its right to review the decision of the ALJ. Plaintiff thereafter sought review by this Court.

## II.  The Magistrate Judge's Report and Recommendation

As recited by Magistrate Judge Litkovitz, on appeal Plaintiff raises eight assignments of error. She argues that the ALJ erred when: (1) she improperly weighed the medical opinions of record; (2) she incorrectly analyzed Plaintiff's fibromyalgia in light of Sixth Circuit precedent; (3) she improperly ignored the opinion of ME Dr. Kushner that

4

Plaintiff's facet joint arthropathy impairment met or equaled the Listing of Impairments; (4) she failed to find that Plaintiff's facet joint arthropathy is a severe impairment; (5) she failed to follow the dictates of the remand order issued in Johnson I; (6) she improperly ignored an RFC assessment performed by Plaintiff's physical therapist, Karen Scholl; (7) she held a second supplemental hearing on April 24, 2012 despite having a complete record before her; and (8) she presented improper hypothetical questions to the VE (presumably Mr. Parsons). Plaintiff also alleges a due process violation, claiming that the ALJ prematurely terminated her cross-examination of ME Dr. Fischer at the April 2012 hearing.

The Magistrate Judge rejected all eight assignments of error, as well as Plaintiff's assertion that she was denied due process. Initially, she concluded that the ALJ complied with the dictates of the remand order in Johnson I (error 5). The Magistrate Judge determined that the ALJ did not err when she declined to weigh the RFC assessment by Plaintiff's physical therapist inasmuch it was not consistent with the severely restrictive RFC assessment by treating physician Dr. John Baxley, and, in any event, the regulations denote physical therapists as "other sources" rather than "acceptable medical sources" (compare 20 C.F.R. § 404.1513(a) with 20 C.F.R. §404.1513(d)(1)), citing Nierzwick v. Comm'r of Soc. Sec., 7 F.

5

App'x 358, 363 (6th Cir. 2001) and Jamison v. Comm'r of Soc. Sec., No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008).  Nor did the ALJ err when she declined to consider the two years of treatment Plaintiff received after her insured status lapsed on December 31, 2009 from Dr. Mitchell E. Simons, a pain management specialist, on the premise that post-insured status evidence is only minimally probative and generally not relevant, citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) and Bagby v. Harris, 650 F.2d 836, 839 (6th Cir. 1981).

Holding a second supplemental hearing on April 24, 2012 (error 7) not only was not error, the Magistrate Judge resolved, but rather was necessary to comply with that portion of the remand order directing the ALJ to "carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia" (Johnson I (doc. 17 at 14)).  At the December 15, 2011 hearing, ME Dr. Kushner testified that he did not believe fibromyalgia was even a recognized medical impairment or disease, an opinion that flies in the face of Social Security Ruling 12-2p and binding Sixth Circuit precedent.  See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243-44 (6th Cir. 2007).  In the Magistrate Judge's view, to not have held another hearing likely would have been reversible error if the ALJ relied on the opinion of Dr. Kushner to deny Plaintiff benefits.  The Magistrate Judge disagreed with

6

Plaintiff's assertion that Dr. Kushner diagnosed Plaintiff with facet joint arthropathy and that the extent of her impairment in this regard met or equaled one of the listings in Appendix 1 to Subpart P of the regulations (error 3). In fact, the Magistrate Judge remarked that his testimony is "confusing[ and] equivocal" and that "[t]here are no follow-up questions [in the record] to Dr. Kushner to flesh out or clarify his testimony" (doc. 12 at 12). Thus, she found no error in the ALJ's decision declining to find that Plaintiff had a condition that met or equaled a listed impairment.

Addressing errors 1, 2 and 6 together, as did Plaintiff, the Magistrate Judge found that the ALJ did not err in giving just "some weight" to the opinion of treating physician Dr. Baxley and choosing instead to adopt the less restrictive RFC assessment of ME Dr. Fischer, believing it to be the most consistent with the evidence of record, or in not assigning any weight to the RFC assessment completed by Plaintiff's physical therapist. Specifically, Dr. Fischer opined that Plaintiff was capable of performing a range of light work with additional limitations such as sitting, standing and walking six hours out of an eight-hour day, two hours at a time each; no use or climbing of ladders, ropes or scaffolding; no crouching or crawling; and only occasional stooping or climbing of stairs. The Magistrate Judge considered the ALJ's decision in this

7

regard to be substantially supported by the record because the ALJ discussed Dr. Fischer's rejection of Dr. Baxley's fibromyalgia diagnosis based on the lack of supporting findings in his treatment notes; observed that Dr. Baxley did not rule out other potential reason for Plaintiff's symptoms given that fibromyalgia is a diagnosis of exclusion; and identified those portions of Dr. Fischer's testimony that highlighted inconsistencies between the objective evidence and Dr. Baxley's very restrictive RFC assessment[1], such as Plaintiff had normal reflexes and leg strength on examination, had no difficulty ambulating, had responded well to sleep apnea treatment, had normal conduction studies in her extremities and was able to treat her degenerative disc disease with epidural steroid injections. Further, the Magistrate Judge believed substantial evidence supported the ALJ's determination to reject Dr. Baxley's RFC assessment because his diagnosis of fibromyalgia was not supported by the requisite examination findings and

---

[1] In August 2006, having treated Plaintiff for the past year, Dr. Baxley completed a "Fibromyalgia and Myofascial Pain Functional Questionnaire" in which he diagnosed Plaintiff with the impairments of fibromyalgia, carpal tunnel syndrome and depression. He opined that Plaintiff had severely limited functional abilities, including only being able to sit or stand/walk for less than two hours at a time; needing to shift positions at will; being able to carry less than 10 pounds occasionally; and being restricted to handling and fingering objects with her right hand 50 percent of the time and with her left hand 10 percent of the time with no ability to reach overhead. (Tr. 301-04.)

8

symptomology; his diagnosis and accordant limitations for carpal tunnel syndrome was contradicted by the objective findings; there was no evidence of record from a rheumatologist that supported a finding that Plaintiff had significant physical limitations because of fibromyalgia; and, as just delineated, Dr. Fischer's opinion was more consistent with the record as a whole as to Plaintiff's functional limitations.  The Magistrate Judge considered the ALJ's evaluation to be consistent with Sixth Circuit precedent even though she adopted the RFC assessment of Dr. Fischer who opined that the evidence of record did not support a finding the Plaintiff had, or was limited by, fibromyalgia.  Of course, an opinion rooted solely in a lack of objective findings is not a sufficient basis for rejecting limitations associated with fibromyalgia.  Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 819-20 (6th Cir. 1988).  But the Magistrate Judge observed that Dr. Fischer's opinion was much broader-based, as he pointed out that Dr. Baxley's treatment notes did not meet the criteria used by the American Rheumatologic Association for diagnosing fibromyalgia; the treatment notes attributed basic neck pain to fibromyalgia despite no findings of trigger-point pain; and the records were confined only to complaints of pain in her neck area.  Moreover, while Dr. Fischer acknowledged that Dr. Baxley checked off many symptoms consistent with a diagnosis of fibromyalgia when he

9

completed a "Fibromyalgia and Myofascial Pain Functional Questionnaire," those same symptoms did not appear in his treatment notes, nor did those notes support that he went through a process of diagnosis elimination before settling on a diagnosis of fibromyalgia. Finally, based on the regulations and case law cited above, the Magistrate Judge observed ALJ was under no obligation to give any special weight to a physical therapist's RFC assessment and thus no error in this respect could result.

The Magistrate Judge regarded Plaintiff's assignment of error with regard to the ALJ allegedly presenting "invalid" hypothetical questions to the VE to be undeveloped and therefore not well-taken (error 8). In like manner, she marginalized Plaintiff's contention that the ALJ erred by failing to find her facet joint arthropathy to be a severe impairment (error 4) and noted that, in any event, any error would be harmless because once one "severe" impairment is found to exist, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential evaluation process described in 20 C.F.R. §§ 404.1523, 404.1545(a)(2), relying on Meadows v. Comm'r of Soc. Sec., No. 1:07-cv-1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citation omitted).

Finally, the Magistrate Judge disagreed that it was reversible error for the ALJ to cut short Plaintiff's cross-

10

examination of Dr. Fischer. Upon review of the April 2012
transcript she concluded that Plaintiff was given "ample
opportunity" in this regard (doc. 12 at 25). She noted that the
ALJ "instructed [P]laintiff's counsel to 'wrap it up' several
times as it was still necessary to question the VE and the ALJ
had to attend to another scheduled hearing" (id.). Counsel
stated he "'would have other questions for [Dr. Fischer]'" but
did not identify the substance of those questions on the record
(id.). Plaintiff's Statement of Errors specified that she would
have questioned Dr. Fischer on the RFC opinion and testing
results of Plaintiff's physical therapy provider. But the
Magistrate Judge observed that Plaintiff could have obtained
this information through the issuance of interrogatories, the
use of which satisfies due process requirements in Social
Security administrative determinations (id. at 26 (citing
Chandler v. Comm'r of Soc. Sec., 124 F. App'x 355, 359 (6th Cir.
2005)). For all these reasons, then, as well as her reference
again to the designation of physical therapists as "other
sources" rather than "acceptable medical sources" rendering any
"ostensible" error harmless, the Magistrate Judge concluded that
Plaintiff received the benefit of a full and fair hearing (id.
at 26).

### III. Plaintiff's Objections

Plaintiff lodges four separate objections to the Magistrate Judge's Report and Recommendation, some of which overlap. She argues that the Court should reject the finding that there was substantial evidence to support the ALJ's decision. In this regard, Plaintiff contends that the only evidence to refute the opinions of her treating physician Dr. Baxley and her pain management specialist Dr. Simons was the "one-shot opinion testimony" of a non-examining consultant, ME Dr. Fischer, who is a non-practicing physician. Moreover, it was "illogical" for the ALJ to find that Plaintiff had the severe impairments of fibromyalgia and myofascial pain syndrome yet accept the RFC assessment of ME Dr. Fischer who testified that Plaintiff did not suffer from fibromyalgia, particularly when the reasoning supporting his conclusion is contrary to Sixth Circuit precedent.

Plaintiff argues next that because the Magistrate Judge found the December 15, 2011 testimony of ME Dr. Kushner to be "less than clear" due to the appearance of two "INAUDIBLES" in the transcript, she should have recommended a remand for either completion of an accurate transcript, if feasible, or for another hearing to clarify the issue. Plaintiff maintains that the Commissioner is obligated to provide the Court with a clear record of the proceedings below, and considers the substance of

this testimony critical because she believes that ME Dr. Kushner testified that her condition (of facet joint arthropathy) was severe enough to equal one of the listings in Appendix 1 to Subpart P, thus rendering her disabled under the regulations. Third, Plaintiff argues that the Magistrate Judge should have recognized that it was error for the ALJ to attach no relevance to the treatment records of her pain management specialist Dr. Simons, because, even though they are post-insured status evidence, they establish a seamless period of similar treatment of severe pain. Finally, Plaintiff argues that the Magistrate Judge should have found that her due process rights and Defendant Commissioner's own regulations were violated when the ALJ cut short her counsel's cross-examination of ME Dr. Fischer.

## IV. Discussion and Conclusion

It is well-established that the Court's review of the Commissioner's decision to deny benefits is limited in scope by 42 U.S.C. § 405(g) and constitutes a dual inquiry. We must evaluate both whether the ALJ applied the correct legal standards and whether his or her findings are supported by substantial evidence. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009). As set forth below, the Court agrees with Plaintiff that the ALJ applied incorrect legal standards in evaluating the functional capacity assessments of Drs. Baxley, Kushner, and Fischer and in failing to credit the post-insured

13

treatment records of Dr. Simon. Given these errors, we likewise agree that substantial evidence does not support the ALJ's determination that Plaintiff has an RFC to perform a range of light work, the basis upon which Plaintiff was denied disability benefits.

We begin by excerpting the following passage from the ALJ's decision:

> There is a suggestion in the record that the claimant may have fibromyalgia (Exhibit 10F/9), although most treating sources find a myofascial pain syndrome. The undersigned did not find her fibromyalgia to be a severe impairment in the prior decision. The Court remanded the case, directing the (sic) fibromyalgia be added as a "severe" impairment.
>
> . . . . It does not appear that the claimant has ever been evaluated by a rheumatologist who accepted the diagnosis of fibromyalgia, nor has she been evaluated by other specialists. In light of the Court Order to add fibromyalgia as a severe impairment, and the lack of clear evidence of such a diagnosis in the medical evidence of record, impartial medical experts, Drs. Kushner and Fischer, were present and testified at the supplemental hearings. . . [B]oth agreed that the claimant really did not make out a diagnosis of fibromyalgia, yet the court directed that I [find] fibromyalgia as a severe impairment.

(Tr. 434 (emphasis added).) The Court's February 23, 2011 Order speaks for itself, of course, but a plain reading of it makes clear that at no time was the ALJ directed to add fibromyalgia as a severe impairment. Indeed, the Magistrate Judge noted as much:

> Upon review, the undersigned does not agree with the ALJ's interpretation of the prior remand order. That order simply required the ALJ to carefully review the evidence related to plaintiff's allegations of additional

14

limitations based on evidence of fibromyalgia but <u>did not</u> <u>mandate a finding that the impairment was severe</u>.

(Doc. 12 at 18 n.6 (emphasis added).) We will not attempt to discern why the ALJ believed she was forced into finding that Plaintiff had the severe impairments of both myofascial pain syndrome <u>and</u> fibromyalgia. Rather, we proceed on the premise that substantial evidence supports the ALJ's finding that Plaintiff has these two severe impairments, as this point is not contested by her counsel, and consider whether substantial evidence similarly supports the ALJ's finding that Plaintiff has the functional capacity to perform a range of light work and therefore is not entitled to benefits. In tandem, we also consider whether correct legal standards were applied by the ALJ in the course of evaluating the evidence before her and otherwise.

We turn now to the December 2011 hearing, at which the ALJ received testimony from ME Dr. Kushner, who is board certified in both rheumatology and internal medicine, but describes himself as "[l]argely [    ]a rheumatologist" (Tr. 1005). Dr. Kushner made plain his view that "[he is] not generally sympathetic to the diagnosis of fibromyalgia" as he "[doesn't] know how to medically determine whether somebody has fibromyalgia in the absence of objective findings" (Tr. 1007). And, in like manner, "[he doesn't] know how to determine if

15

somebody has a myofascial pain syndrome in the absence of objective findings (id.). To him, "they're both hypothetical constructs to explain away the fact that the patient is complaining of pain" (Tr. 1008). Clearly, Dr. Kushner's school of thought is at odds with Sixth Circuit precedent recognizing the diagnosis of fibromyalgia (see Rogers, 486 F.3d at 243-44) and for that reason his opinion is preliminarily suspect.[2] But setting aside his position that "we [] don't have a medically determinable condition here" (Tr. 1011), Dr. Kushner did testify that "[t]he clinical picture here is consistent with what is being described in [the April 2010] proposed criteria"[3] to diagnose fibromyalgia (Tr. 1010-11). He observed also that Plaintiff's symptoms had "been consistent over time" (Tr. 1012). And the ALJ conceded that Dr. Kushner "agreed with the degree of functional impairment and limitations provided by Dr. Baxley and his nurse practitioner" (Tr. 435).[4]

---

[2] Given the ALJ's self-imposed construct that she was obliged to find that Plaintiff had the severe impairment of fibromyalgia, it is surprising that she subpoenaed this expert to testify (see Tr. 556-57) assuming she knew his perspective in advance, or, that she chose to proceed with his testimony once his philosophy became apparent, which was nearly immediately after his examination began (see Tr. 1005-07).

[3] To put this date in perspective, Dr. Kushner's testimony was given in December 2011, with the criteria referenced being proposed the calendar year prior.

[4] The ALJ discounted Dr. Kushner's opinion as "not helpful" because he attributed Plaintiff's symptoms to obstructive sleep apnea rather than fibromyalgia (Tr. 435-36).

Addressing Plaintiff's second objection first, she argues that Dr. Kushner additionally testified that he believed her symptoms were consonant with a diagnosis of facet joint arthropathy and that her condition was severe enough to equal one of the listings. We concur with Plaintiff's reading of the record and thus sustain her objection in this regard. Unlike the Magistrate Judge, despite the two significant "INAUDIBLES," we are not confused by Dr. Kushner's testimony. Rather, assessing the passage as a whole, we think it apparent that, while philosophically unwilling to diagnose Plaintiff's condition as fibromyalgia, he would "go along with" the diagnosis of facet joint arthropathy, which would suffice "to equal some listing or other in the system" (Tr. 1020). To be sure, testimony that is more precise and less colloquial would have been appreciated by the Court, but Dr. Kushner's failure to ceremoniously opine that said impairment equaled one of the listings in Appendix 1 to Subpart P of the regulations (20 C.F.R. § 404), does not render his testimony equivocal.[5] On this

---

[5]We observe that, once Dr. Kushner was qualified as an expert, the ALJ received an affirmative answer from him when asked if he was "familiar with the [C]ommissioner's listing of impairments and with the definition[s] of sedentary through heavy work" (Tr. 1005-006). Thus, it seemed incumbent on the ALJ, as hearing officer, to ask Dr. Kushner to specify which listing he believed that Plaintiff's impairment (of facet joint arthropathy) met if she thought it necessary. In any event, it was not Plaintiff's burden to ask follow-up questions to "flesh out or clarify [Dr. Kushner's] testimony" as the Magistrate Judge suggested (doc. 12

17

basis alone, the Court could reject the Magistrate Judge's recommendation and reverse the decision of the Commissioner denying benefits, as a finding at Step Three that Plaintiff has a severe impairment that meets one of the listings (and meets the duration requirement) renders her disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); 404.1525. However, we proceed to consider whether the Magistrate Judge was correct in her assessment that substantial evidence supported the RFC adopted by the ALJ and, in so doing, address Plaintiff's first and third objections.

At the second post-remand hearing held April 24, 2012, the ALJ received testimony from ME Dr. Fischer, who is board certified in family medicine, but has not been involved in active clinical practice since 2006 (Tr. 1080).[6] Review of his testimony indicates that he accepts the diagnosis of fibromyalgia generally, but believes that it was improperly made as to Plaintiff's condition. In support of his opinion, Dr. Fischer noted a lack of "specific counting of [common] tender points" (Tr. 1065) and underscored the fact that, when examined by her treating physicians, Plaintiff exhibited normal muscle

---

at 12). Counsel would have no way of knowing at that time that portions of Dr. Kushner's testimony would be inaudible to the transcriber. The Court can insist on competence, but not clairvoyance.

[6] Dr. Fischer is employed by Assurant Employee Benefits (Tr. 568-70).

18

strength and reflexes (Tr. 1065-66, 1068). He repeatedly observed that her subjective symptoms were disproportionate to the objective physical findings (Tr. 1068-69). While he was willing to allow that Plaintiff "has some conditions that would be considered severe" (Tr. 1069), he did not believe that any one of them would meet, or in combination would equal, one of the listings (Tr. 1070). He thereafter concluded that Plaintiff's functional capacity was "limited to light physical exertional work" (Tr. 1071).[7] When asked by the ALJ why she ought not give controlling weight to the functional capacity limitation opinion of Plaintiff's treating physician and his nurse practitioner—namely, that Plaintiff has a functional capacity of "less than sedentary"—Dr. Fischer replied:

> And that—I just—this one says fatigue, severe—again that's a subjective complaint and says she could sit during, or at one time less than two hours, and she could not even work an eight[-]hour day. I just don't believe the medical evidence supports any of that. She's got normal strength in her extremities. In most, throughout most of the records her big complaint is just she complains of fatigue and pain, but very little objective evidence, and to say that she can't work an eight[-]hour day, and that she can sit and/or sand (sic) or walk less than two hours a day, that means basically she's almost like bedridden the whole day, and I don't believe the medical record supports that. She certainly has gone to enough doctor appointments where she obviously just is able [to] get up, get out of the

---

[7]Dr. Fischer went on to describe that Plaintiff could "lift[] and carry [] occasionally 25 pounds, frequently ten pounds. She could sit, stand, and walk for an eight[-]hour day, about six hours each or in combination through an eight[-]hour day, and at any one time she could sit, stand, and walk for two hours at any one time" (Tr. 1071).

house and go, get out of bed or whatever.  I just think it's [an] incredibly severe limitation <u>with minimal objective evidence</u> that she can't she can only be up and about for a couple of hours.

(Tr. 1072-73 (emphasis added).)  The portions underscored reveal that the factors upon which Dr. Fischer relies to discount the diagnosis and concomitant functional limitation proposed by Plaintiff's treating physician are ones improperly considered according to Sixth Circuit law in cases of fibromyalgia. <u>Rogers</u>, 486 F.3d at 245 ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant."); <u>Preston</u>, 854 F.3d at 820 ("[Fibromyalgia] patients manifest normal muscle strength and neurological reactions and have a full range of motion.").  <u>See</u> <u>Kalmbach v. Comm'r of Soc. Sec.</u>, 409 F. App'x 852 (6th Cir. 2011) (applying <u>Rogers</u> and <u>Preston</u>).  Indeed, it appears that ME Dr. Fischer's unwillingness to diagnose Plaintiff with fibromyalgia improperly colored his assessment of her RFC.  For example, he refers to what he considers to be insufficient trigger points (other than in Plaintiff's neck) as evidence that Dr. Baxley's diagnosis of fibromyalgia—and his more limited functional capacity determination—is without support.  Yet the Court notes that a set number of trigger points is no longer definitive in

20

the diagnosis of fibromyalgia,[8] and more importantly in the case before us, _whether_ Plaintiff had the severe impairment of fibromyalgia simply was _not_ at issue. Thus, the number of trigger points (deficient or not) was improperly considered with regard to a functional capacity assessment. Boston v. Astrue, No. 1:10-cv-408, 2011 WL 4914759 at *9 & n.5 (S.D. Ohio Sept. 15, 2011) ("[W]hile this analysis may be relevant for purposes of diagnosing the impairment, it is not relevant for purposes of determining Plaintiff's RFC in light of the ALJ's Step 2 finding that Plaintiff's fibromyalgia constitutes a severe impairment . . . ."). Thus, it was error for the ALJ to credit Dr. Fischer's less restrictive functional capacity assessment.[9]

Without question, the treatment evidence of record supports a more restrictive RFC. Physical therapist Karen Scholl conducted a functional capacity evaluation of Plaintiff on March 19, 2009. Among other activities she stated that the length of

---

[8] See Lawson v. Astrue, 695 F. Supp. 2d 729, 735 (S.D. Ohio 2010) (Beckwith, S.J.) (([T]he "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, but []"most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia." (citing Merck Manual Online Medical Library, http:// www.merck.com (last visited February 22, 2010)).

[9] Even in the absence of binding precedent, we still would find the ALJ's decision flawed. Common sense would dictate that she should not credit the functional capacity assessment of a medical expert who, at the outset, made clear he was unwilling to accept her determination that Plaintiff suffers from the severe impairment of fibromyalgia.

time Plaintiff could sit was limited to 5-10 minutes, standing
to 30 minutes and walking to 5 minutes.  In a section titled,
"Specific job duty limitations" Ms. Scholl wrote, "Pt. would
have difficulty working at this time due to production of pain
[with] most activities."  (Tr. 649-50.)  The Magistrate Judge
accurately observes that these time limitations were not given
in the context of an eight-hour workday (doc. 12 at 23);
nonetheless, the Court agrees that they denote a significant
limitation assigned to Plaintiff.  Further, while physical
therapists do not fall in the category of an "acceptable medical
source[,]" their opinions still may be considered under the
definition of "other sources[.]"  20 C.F.R. § 404.1513(a),
404.1513(d)(1).  To this point, the Court agrees with Plaintiff
that "both [the] regulations and common sense suggest that such
evidence should not be discounted out of hand" (see doc. 13 at
14).  Of greater impact, however, are the treatment records of
Mitchell E. Simons, M.D., of the Greater Cincinnati Pain
Management Centers, both pre- and post-December 31, 2009,
Plaintiff's date last insured.  Pre-December 31, 2009, Dr.
Simons not only diagnosed fibromyalgia and other impairments on
several different occasions (see Tr. 821, 823, 825, 828, 830-32,
835-36), but relevant to the issue of functional capacity, also
made significant clinical findings of "tenderness" in all parts
of Plaintiff's back and an ability to reproduce pain upon

"flexion, extension and side bending of the cervical and lumbar spine" (see, e.g., Tr. 823). The ALJ failed to consider, however, almost two years of treatment post-December 31, 2009 on the basis of relevance. Treatment after expiration of a claimant's last date insured is typically not germane, but, as appropriately noted by the Magistrate Judge, such evidence is relevant to establish that an impairment has existed continuously and in the same degree as of the date Plaintiff's insured status lapsed. See generally King v. Sec'y of Health & Human Servs., 896 F.2d 204, 205-06 (6th Cir. 1990); Johnson v. Sec'y of Health, Educ. & Welfare, 679 F.2d 605 (6th Cir. 1982). Comparing the post-December 31 treatment records with those occurring pre-December 31, it is clear they establish, as counsel advocates, a "seamless period of similar treatment" of Plaintiff's severe pain consistent with Dr. Baxley's 2006 restrictive RFC (see Tr. 772, 780, 784, 790, 792, 794, 796, 798, 800, 804, 810, 812, 814, 818). Accordingly, the Court sustains Plaintiff's third objection.

In determining the weight to be accorded to functional limitations, the opinions of treating physicians command "special significance given the unique nature of fibromyalgia" particularly when being compared with the opinions of non-examining consultative physicians. Rogers, 486 F.3d at 245. Despite this directive, the ALJ relied instead on expert

23

testimony, which distilled to its essence, amounted to a family practice physician who has not treated patients for the past six years opining that fibromyalgia exists, but Plaintiff does not have it, versus a rheumatologist who eschews the diagnosis of fibromyalgia generally and believes Plaintiff's symptoms are more properly diagnosed as a different severe impairment (of joint facet arthropathy that actually meets one of the listings). The former, ultimately adopted by the ALJ, concluded that Plaintiff had the functional capacity of light work and the latter agreed with the more restrictive functional limitation described by Plaintiff's treating physician. This Court has ruled previously that "the opinion of a non-treating 'one-shot' consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years." Barker-Bair v. Comm'r of Soc. Sec., No. 1:06-CV-00696, 2008 WL 926569, at *9 (S.D. Ohio Apr. 3, 2008) (Spiegel, S.J.) (citing Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1054 (6th Cir. 1983)). As recounted above, we regard Dr. Baxley's more restrictive RFC to be "properly supported." As a matter of law, then, the less restrictive RFC of ME Dr. Fischer cannot be relied upon by the ALJ to constitute the necessary substantial evidence to support her determination; Plaintiff's first objection is therefore sustained. As this opinion served

as the foundation to discount treating physician Dr. Baxley's more restrictive RFC opinion, reversal is required and a finding of disability must ensue.

Because we find her first three objections to be well-taken, the Court need not reach the issue of whether Plaintiff was denied due process when the ALJ cut short her counsel's cross-examination of ME Dr. Fischer during the second supplemental hearing on April 24, 2012. The Magistrate Judge disagreed that it was reversible error on the authority of Chandler v. Comm'r of Soc. Sec., in which the Sixth Circuit considered whether a due process violation occurred when an ALJ denied a claimant the opportunity to cross-examine a medical expert. 124 F. App'x at 359. We find Chandler to be not completely apposite, as counsel in that case failed to send interrogatories to the ME despite the ALJ specifically affording claimant the opportunity to do so and the record before us, in contrast, reflects no such invitation. Regardless, we already have indicated that it was error for the ALJ to credit ME Dr. Fischer's opinion, and thus the due process question presented is moot.

As required by 29 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered de novo the filings in this matter. As detailed above, we conclude that the

ALJ applied incorrect legal standards and thus her ultimate decision denying Plaintiff DIB is not supported by substantial evidence. Under such circumstances, the Court finds that, having already remanded this matter one time, any further delay would not serve the interests of justice. Rather, where the proof of disability is strong and the evidence to the contrary is lacking, the Court finds that an immediate award of benefits to Plaintiff is appropriate. Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994). In such a case as this, "it is well to bear in mind" that, "[t]he Social Security Act is a remedial statute" that "must be 'liberally applied.'" Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992).

In sum, the Court SUSTAINS Plaintiff's Objections to the Magistrate Judge's recommendation that there was substantial evidence to support the ALJ's functional capacity determination, that the testimony of ME Dr. Kushner was equivocal and it was Plaintiff's obligation to clarify same, and that it was not error to discount the post-insured status treatment records of Dr. Simons and DENIES AS MOOT her request for oral argument; REJECTS the Magistrate Judge's Report and Recommendation (doc. 12); REVERSES the decision of the ALJ pursuant to 42 U.S.C. § 405(g); and ENTERS Final Judgment in favor of Plaintiff Betty Johnson, finding that she is entitled to disability insurance

benefits as of March 16, 2004. The Court AWARDS Plaintiff Betty Johnson disability insurance benefits based on that date and REMANDS this matter to Defendant Commissioner of Social Security for an immediate award consistent with this Opinion and Order. Finally, we Order that this matter be CLOSED on the Court's docket.

SO ORDERED.

Dated: 4/15/14

S. Arthur Spiegel
United States Senior District Judge